FILED
FEB 13 2008
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CYNTHIA ELISA WARD, INDIVIDUALLY AND AS GUARDIAN OF JOHN EDKER WARD, JR.; CARRIE WARD; AND JOHN SAMUEL WARD

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

) Civil Action No. SA-06-CA-1067XR

ORDER APPROVING SETTLEMENT

On this 13th day of February, 2008, the above-referenced matter came on for hearing and approval by the Court as to the reasonableness of a settlement between the United States of America and John Edker Ward, Jr. Plaintiffs appeared through their counsel of record. John Edker Ward, Jr., also appeared through his court appointed Guardian, Cynthia Elisa Ward, and his court appointed Guardian ad Litem, Jason Coomer. Defendant United States of America appeared through its counsel of record.

The complete and precise terms and conditions of the settlement are set forth in the Stipulation For Compromise Settlement And Release Of Federal Tort Claims Act Claims Pursuant To 28 U.S.C. § 2677 (hereinafter "Stipulation") and the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust For The Benefit of John Edker Ward, Jr. (hereinafter "Reversionary Trust"), attached as Exhibits "A" and "B." The Court has reviewed the Stipulation and Reversionary Trust, taken testimony, and heard arguments in favor of this

settlement. The Court is fully informed of the specifics of the full and final terms and conditions of the settlement, including the necessity of the approval by the Attorney General of the United States on behalf of defendant United States and the approval of a court or courts of competent jurisdiction on behalf of any minor or incompetent adult being required to sign the Stipulation releasing any and all claims said minor or incompetent adult may have against the United States as a condition of the settlement. The Court finds that the terms and conditions of this settlement, as set forth in the Stipulation, are fair, reasonable, and in the best interests of John Edker Ward, Jr., an incompetent adult.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the settlement, as set forth in Exhibits A and B, is hereby approved. It is further Ordered that Cynthia Elisa Ward, as Guardian of John Edker Ward, Jr., and Jason Coomer, as Guardian ad Litem for John Edker Ward, Jr., are authorized and required to sign the Stipulation, Reversionary Trust and any other documents that are necessary to consummate this settlement on behalf of John Edker Ward, Jr., and to provide any information and documentation necessary to complete the settlement and the purchase of annuity contracts.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the settlement amount of $1,575,000.00 (hereinafter "Settlement Amount") shall be distributed according to the terms and conditions of the Stipulation. With respect to the settlement check that will be made payable to the named plaintiffs pursuant to Paragraph 3.a.i. of the Stipulation, the Court hereby Orders the plaintiffs to endorse said check over to their attorneys to be deposited by the attorneys into their client trust account, from which the plaintiffs' attorneys shall first pay the attorneys' fees (including the fees of the Guardian ad Litem), costs, and expenses herein approved, then pay

any lien or claim for reimbursement, and finally pay the balance remaining into a special needs trust for the use and benefit of John Edker Ward, Jr.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that attorneys' fees, including the fees of the Guardian ad Litem as herein approved, in this action shall be twenty-five percent (25%) of the Settlement Amount and shall be paid as provided in the Stipulation. The Court finds that Jason Coomer shall be paid from said attorneys' fees the sum of $5,000.00 for his services as the Guardian ad Litem for John Edker Ward, Jr. The Court finds that the costs and expenses associated with the litigation are $87,441.66 and that such costs and expenses are fair, reasonable, and necessary. It is hereby Ordered that such costs and expenses are approved and are to be paid as provided in the Stipulation. The Court finds and holds that plaintiffs are legally responsible for any and all past, present, and future liens or claims for payment or reimbursement, including any liens or claims for payment or reimbursement by Medicaid, Medicare, or other healthcare providers. The Court hereby Orders plaintiffs, by and through their attorneys, to satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any individual or entity, including Medicaid and Medicare. The Court further Orders that plaintiffs and their attorneys shall provide to the United States the information required by the Stipulation regarding the satisfaction or resolution of such liens or claims for payment or reimbursement within the time specified in said Stipulation.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiffs, upon final execution of the Stipulation and within five business days after the plaintiffs receive the settlement check as provided in Paragraph 3.a.i. of the Stipulation, shall file a motion with the

District Court for the entry of an Order dismissing this action with prejudice, with each party to the action bearing its own fees, costs, and expenses.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2008

APPROVED AS TO FORM AND CONTENT:

**JOHNNY SUTTON**
United States Attorney
Attorneys for Defendant,
United States of America

BY: ______________________________
**HAROLD E. BROWN, JR.**
Assistant United States Attorney
Oklahoma Bar No. 001192
**JAMES W. JENNINGS, JR.**
Assistant United States Attorney
Texas bar No. 10641400
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7320
(210) 384-7322 Fax

**WHITEHURST, HARKNESS, OZMUN & BREES, P.C.**
P.O. Box 1802
Austin, Texas 78767-1802
(512) 476-4346
(512) 476-4400 (fax)

______________________________
**William O. Whitehurst**
State Bar No. 00000061
**Eugene W. Brees**
State Bar No. 02947500
**Michele Cheng**
State Bar No. 00796345
**Sylvia Imhoff**
State Bar No. 10388745
Attorneys for plaintiffs

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CYNTHIA ELISA WARD, INDIVIDUALLY AND AS GUARDIAN OF JOHN EDKER WARD, JR.; CARRIE WARD; AND JOHN SAMUEL WARD | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. SA-06-CA-1067XR |
| UNITED STATES OF AMERICA | ) |
| Defendant. | ) |

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between each of the undersigned plaintiffs, Cynthia Elisa Ward, Individually and as Guardian of John Edker Ward, Jr., John Edker Ward, Jr., Carrie Ward, and John Samuel Ward, and the defendant, United States of America, by and through their respective attorneys, as follows:

1. The parties to this Stipulation do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2. This Stipulation is not, is in no way intended to be, and should not be construed as an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the plaintiffs. This settlement is entered into by all parties for the purpose of compromising disputed personal injury claims under the Federal

Tort Claims Act and avoiding the expenses and risks of further litigation.

3. The United States agrees to pay the cash sums set forth below in Paragraph 3.a., to purchase the annuity contract described below in Paragraph 3.b., and to establish the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of John Edker Ward, Jr., (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

a. Within three business days after counsel of record for the United States receives (1) this Stipulation signed by all parties to said document; (2) the Reversionary Trust signed by all parties to said document; (3) a court Order approving the settlement on behalf of any legally incompetent or minor plaintiff; (4) the Social Security numbers or tax identification numbers of plaintiffs and their attorneys, and the social security card and birth certificate of John Edker Ward, Jr.; and (5) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will send a formal request to the United States Department of the Treasury requesting that the sum of One Million Five Hundred Seventy-Five Thousand Dollars ($1,575,000.00) (hereinafter "Settlement Amount") be expeditiously sent by electronic funds transfer ("EFT") to Mesirow Financial Structured Settlements' settlement account. Mesirow Financial Structured Settlements agrees to distribute the Settlement Amount, as provided below in Paragraphs 3.a., within five business days after Mesirow Financial Structured Settlements receives a notice from its bank that the Settlement Amount has been received into said company's settlement account and has received legible copies of the birth certificate and social security card of John Edker Ward, Jr.

i. On behalf of plaintiffs, a check in the cash sum of Eight Hundred Twenty-Five Thousand Dollars ($825,00.00) (hereinafter "Upfront Cash") made payable to Cynthia Elisa

Ward, Individually and as Guardian of John Edker Ward, Jr., to be mailed to the United States Attorney for the Western District of Texas to hold until plaintiffs' counsel have filed a motion with the District Court to dismiss this action in its entirety with prejudice, with each party to bear its own costs, expenses, and fees. With respect to the payment of the Upfront Cash, the plaintiffs stipulate and agree that:

(a) The United States will not sign any annuity application form or uniform qualified settlement form or any equivalent form; nor will the United States pay the Upfront Cash into a qualified settlement fund or its equivalent. Plaintiffs further stipulate and agree that they, their attorneys, Guardian Ad Litem, and their representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfrônt Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.i.(a) precludes the plaintiffs from purchasing standard, non-structured settlement annuities after the plaintiffs have cashed their Upfront Cash settlement check, but they agree that they will not represent to any person, entity, or agency that they are purchasing structured settlement annuities and they agree they will not attempt to purchase such structured settlement annuities.

(b) The plaintiffs will endorse the Upfront Cash check over to their attorneys to be deposited in the attorneys' client trust account to facilitate the disbursement of any amounts authorized by the approving court.

ii. For the funding of the Reversionary Trust described below in Paragraph 3.c, the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) (hereinafter "Trust Funding Amount")

to be distributed by Mesirow Financial Structured Settlements, as follows:

(a) To an annuity company, rated at least A+ by A.M. Best rating service, the sum of Four Hundred Seventy-Five Thousand Dollars ($475,000.00) to purchase the installment refund annuity contract described in Paragraph 3.b., below; and

(b) To the Reversionary Trust, the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00).

iii. The parties agree that any attorneys' fees owed by the plaintiffs in their Federal Tort Claims Act suit against the United States shall not exceed 25% of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with any costs and expenses of said action against the United States and any costs, expenses, or fees (including legal fees by any Guardian Ad Litem) associated with obtaining any court approval of this settlement, shall be paid out of the Upfront Cash amount paid pursuant to Paragraph 3.a.i., above, and not in addition thereto. The parties agree that any fees for legal services incurred in this action, and in any court proceedings reviewing the settlement for approval purposes, shall be considered attorneys' fees and not costs, shall be subject to the provisions of 28 U.S.C. § 2678, and shall be paid out of the Upfront Cash amount paid pursuant to Paragraph 3.a.i., above, and not in addition thereto.

iv. The plaintiffs stipulate and agree that they are legally responsible for any and all past, present, and future liens or claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by private insurance companies, Medicaid, or Medicare, arising from the injuries that are the subject matter of this action. The plaintiffs stipulate and agree that they will satisfy or resolve any and all past, present, and future liens or

claims for payment or reimbursement asserted by any individual or entity, including private insurance companies, Medicaid, and Medicare. The plaintiffs, their attorneys, and the Guardian Ad Litem represent that, as of the date they sign this Stipulation, they have made a diligent search and effort to determine the identity of any individual or entity that has or may have a lien or claim for payment or reimbursement arising from the injuries that are the subject matter of this action. The plaintiffs and their attorneys agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by the plaintiffs, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder or claimant has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied by a letter from plaintiffs' attorneys representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder or claimant has waived and released such lien and claim.

b. The United States will purchase an installment refund annuity contract under the following terms and conditions:

i. The installment refund annuity contract will make the following periodic payments to the Reversionary Trust described below in Paragraph 3.c.:

> The sum of $4,358.00 per month for the life of John Edker Ward, Jr. (DOB October 19, 1951) and the period of the installment refund, beginning one month after the date the installment refund contract is purchased. The lifetime annuity payments set forth above have been determined based upon information supplied to the United States as to the birth date of John Edker Ward, Jr.. Should the actual birth date of John Edker Ward, Jr., differ from that noted above, then the amount of the lifetime annuity payments shall be adjusted so the benefits of the contract are what the premiums paid for the lifetime annuity payments would have purchased on the date of the annuity's purchase. In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the monthly annuity payments set forth above shall be adjusted downward or upward

to ensure that the premium cost of the annuity contract is equal to $475,000.00 and not more or less than that amount. In the event of the death of John Edker Ward, Jr., during any period of installment refunds specified in this Paragraph 3.b., all remaining installment refund payments shall be made payable to the United States Treasury and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

ii. The annuity contract being purchased pursuant to this Paragraph 3.b. will be owned solely and exclusively by the United States and will be purchased through Mesirow Financial Structured Settlements as specified above in Paragraph 3.a. The parties stipulate and agree that the United States' only obligation with respect to said annuity contract and any annuity payments therefrom is to purchase the annuity contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to the annuity contract and annuity payments upon the purchase of the annuity contract.

iii. The parties stipulate and agree that the annuity company that issues the annuity contract shall at all times have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check, a direct deposit, or an electronic deposit, in the amount of such payment to the address or account designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company issuing the payment.

iv. The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein or any assets of the United States are subject to execution or any legal process

for any obligation in any manner, and that the plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

v. Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, and to notify the annuity company and the United States of the death of John Edker Ward, Jr., within five (5) days of death.

c. The United States will establish, as the grantor, the Reversionary Trust on the following terms and conditions:

i. The parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference.

ii. The parties agree that the plaintiffs and their successors, assigns, or guardians shall provide to the administrator and trustee of said trust any information, documentation, authorizations, or signatures required by the terms of the trust or by the administrator or trustee in administering the terms of the trust. The parties agree that the failure to provide such information, documentation, authorizations, or signatures may result in the denial, in whole or part, of payments from the trust estate, depending on the terms of the trust.

iii. The parties agree that plaintiffs and their heirs, executors, administrators, or assigns shall maintain with the trustee, the administrator, and the United States a current mailing address, and shall notify the trustee, the administrator, and the United States of any event upon which the right of payments from the trust estate may depend, including the death of John Edker Ward, Jr., within five (5) days of the date of such event.

iv. The parties agree that upon the death of John Edker Ward, Jr., the trustee shall, to the extent authorized by the terms of said trust, pay allowable charges, expenses, and benefits, and liquidate and distribute the remaining trust estate to the United States by check made payable to the United States Treasury and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

4. Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby accept the sums set forth above in Paragraph 3.a., the purchase of the annuity contract set forth above in Paragraph 3.b., and the establishment of the Reversionary Trust set forth above in Paragraph 3.c. in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including any future claims for wrongful death and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which the plaintiffs or their heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants, and employees on account of the same subject matter that gave rise to the above-captioned action. Plaintiffs and their guardians, heirs, executors, administrators, and assigns do hereby further agree to reimburse, indemnify, and hold harmless the United States and its agents, servants, and employees from and against any and all such claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, right, subrogated interests, or contribution interests sound in tort, contract, or statutory) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action,

including claims or causes of action for wrongful death.

5. This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms of the settlement and authorize the attorney representing the United States to negotiate and consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation.

b. The parties must agree in writing to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation or the Reversionary Trust. The terms, conditions, and requirements of this Stipulation are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The parties must agree to the terms, conditions, and requirements of the Stipulation and the Reversionary Trust before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

c. John Edker Ward, Jr., must be alive at the time the annuity contract being purchased pursuant to Paragraph 3.b., above, is purchased and at the time the Reversionary Trust being established pursuant to Paragraph 3.c., above, is "deemed established," as that phrase is defined in Article V of the Reversionary Trust. In the event of the death of John Edker Ward, Jr., prior to the date the annuity contract is purchased or the Reversionary Trust is deemed established, the entire Stipulation and the compromise settlement are null and void.

d. Plaintiffs must provide the United States with a complete set of the extant medical

records of John Edker Ward, Jr., (including any independent medical examinations conducted for purposes of this litigation, any and all clinic visits, whether for routine checkups or for treatment and care for any medical condition, injury, disease, etc., any and all hospital and emergency room records, and any records of any diagnostic testing) for the past 36 months for inspection and review by the United States or any medical consultant retained by the United States. In the event said complete set of such medical records does not contain reports of a complete medical examination, including routine cancer, cardiovascular, and pulmonary screens, plaintiffs must have a complete, comprehensive examination (including routine cancer, pulmonary, and cardiovascular screens, and any examinations necessary to screen for cancer, cardiovascular disease, pulmonary disease, renal disease, or other life-threatening diseases or illnesses) conducted at their expense and a copy of all such examinations and reports resulting therefrom must be provided to the United States. In the event said records and reports reveal that John Ward had or has any such potentially life-threatening or life-shortening diseases or illnesses not caused by the medical care at issue in this action, the United States reserves the right to elect not to consummate the settlement and upon such election by the United States the entire settlement is null and void. The plaintiffs must provide all extant medical records for the past 36 months before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

e. Plaintiffs must obtain at their expense an Order by a court of competent jurisdiction approving the terms of the settlement on behalf of any incompetent adult or minor being required to sign this Stipulation. The terms of any such Order must be approved by the Department of Justice's Torts Branch (FTCA Staff) prior to being submitted to any reviewing Court and said

Order signed by such Court cannot be changed by the Court or parties without the prior written consent of the Torts Branch (FTCA Staff). In the event any such minor or incompetent adult is not a party to this action, plaintiffs must obtain said court approval on behalf of any such minor or incompetent adult from a state court of competent jurisdiction. Plaintiffs agree to obtain any such court Order in a timely manner: time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event any such court Order is not obtained with respect to each person being required to sign this Stipulation in a timely manner. In the event plaintiffs fail to obtain any such court Order or any such Order they obtain fails to comply with the terms and conditions of this Paragraph 5.e, the entire Stipulation and the compromise settlement are null and void. The plaintiffs must obtain any such court Order before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee. Plaintiffs represent that the only children of John Edker Ward, Jr., whether by blood, adoption, or otherwise, are Carrie Ward, and John Samuel Ward.

f. Plaintiffs must obtain a release and waiver of any claim or cause of action (whether sounding in tort, contract, statutory, or otherwise) that any alleged tortfeasor, including the co-defendant in this action and its insurance carrier, if any, has or may have in the future against the United States, its agents, servants, and employees arising out of the subject matter of the above-captioned action. The United States will provide the form of Release and Waiver to be used by the plaintiffs. The plaintiffs must obtain such releases and waivers before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

g. In the event there are any currently known liens or claims for payment or

reimbursement, including any liens or claims by Medicaid or Medicare but not including any claim Tricare may have against the plaintiffs, arising out of the subject matter that gave rise to the above-captioned action, whether disputed as legally valid or not, plaintiff must obtain a release and waiver from any State, private entity, or private individual who claims to have such lien or claim. For purposes of this Stipulation, such lien or claim includes but is not limited to, a claim or cause of action for reimbursement for any payments made to or on behalf of the plaintiff or a claim or cause of action for reimbursement for any goods or services provided or furnished to or on behalf of the plaintiff. The United States will provide the form of Release and Waiver to be used by the plaintiffs. Prior to the United States Attorney's Office seeking approval from the Attorney General or his designee, the plaintiffs must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.g., or (ii) a written representation by plaintiffs' counsel stating, after a diligent search of counsel' law firms' records and files and of the plaintiffs' personal records and files, that no such liens or claims are currently known to exist.

6. Subject to the terms and conditions set forth in Paragraph 3.a., above, plaintiffs' attorneys agree to distribute the Upfront Cash paid pursuant to Paragraph 3.a.i., above, to the plaintiffs after paying or resolving any lien or claim for reimbursement or payment for which plaintiffs have agreed to be legally responsible under the terms of this Stipulation. Plaintiffs' attorneys further agree that, within five (5) business days after the plaintiffs receive the settlement check as provided in Paragraph 3.a.i. of the Stipulation, they will file with the United States District Court for the Western District of Texas a dismissal of this action in its entirety, with prejudice and with each party bearing its own costs, expenses, and fees.

7. The parties agree that this Stipulation, including all the terms and conditions of this

compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

8. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _____ day of __________, 2008.
**JOHNNY SUTTON**
United States Attorney
Attorneys for Defendant,
United States of America

BY: ______________________________
**HAROLD E. BROWN, JR.**
Assistant United States Attorney
Oklahoma Bar No. 001192
**JAMES W. JENNINGS, JR.**
Assistant United States Attorney
Texas Bar No. 10641400
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7320
(210) 384-7322 Fax

Executed this 28t day of January, 2008.

**WHITEHURST, HARKNESS, OZMUN & BREES, P.C.**
P.O. Box 1802
Austin, Texas 78767-1802
(512) 476-4346
(512) 476-4400 (fax)

**William O. Whitehurst**
State Bar No. 00000061
**Eugene W. Brees**
State Bar No. 02947500
**Michele Cheng**
State Bar No. 00796345
**Sylvia Imhoff**
State Bar No. 10388745
Attorneys for plaintiffs

Executed this 28th day of January, 2008.
JOHN EDKER WARD, JR., PLAINTIFF

By: Cynthia Elisa Ward
Cynthia Elisa Ward, as Guardian of
John Edker Ward, Jr., an incompetent adult

Executed this 28th day of January, 2008.
JOHN EDKER WARD, JR., PLAINTIFF

By: [signature]
Jason Coomer, as guardian ad litem for
John Edker Ward, Jr., an incompetent adult

Executed this 28th day of January, 2008.
CYNTHIA ELISA WARD, PLAINTIFF

Cynthia Elisa Ward, Plaintiff

Executed this 04 day of Feb, 2008.
CARRIE WARD, PLAINTIFF

Carrie Ward, Plaintiff

Executed this 24 day of January, 2008.
JOHN SAMUEL WARD, PLAINTIFF

John Samuel Ward, Plaintiff

Executed this _____ day of ___________, 2008.

______________________________________
Thomas D. Walsh, Senior Vice President
for Mesirow Financial Structured Settlements

# EXHIBIT

# B

# IRREVOCABLE REVERSIONARY INTER VIVOS GRANTOR MEDICAL CARE TRUST FOR THE BENEFIT OF JOHN EDKER WARD, JR.

## TABLE OF CONTENTS


ARTICLE I ESTABLISHMENT OF THE TRUST
ARTICLE II THE BENEFICIARY OF THE TRUST
ARTICLE III THE PURPOSE OF THE TRUST
ARTICLE IV APPOINTMENT OF TRUSTEE AND ADMINISTRATOR
ARTICLE V THE TRUST ESTATE
ARTICLE VI THE DUTIES OF THE ADMINISTRATOR
Section A. Duty to Act as the Administrator
Section B. Duty to Review Requests for Payment of Allowable Benefits
1. Administrator Has Exclusive Duty
2. Submission of Requests for Payment of Allowable Benefits
3. Documentation Required to be Submitted With Each Request
Section C. Duty to Determine Whether Payment of Request for Allowable Benefits is Authorized by the Trust
1. Determination of Allowable Benefits
2. Administrator's Determination Based Exclusively on the Terms of the Trust
3. Exclusions That Apply to Requests for Payment of Allowable Benefits Unless There is an Express Authorization to the Contrary in Article IX
4. Deadline for Making Determination
5. Reliance on Information Submitted
6. Denial of Requests for Payment of Allowable Benefits
7. Disputes
Section D. Duty to Submit Requests for Payment to Other Sources of Benefits
1. Submission of Requests for Payment to Other Sources of Benefits
2. Definition of Other Sources of Benefits
3. Procedures in the Event the Other Sources of Benefits Refuse to Pay
Section E. Duty to Notify Trustee to Pay Allowable Benefits From Trust Estate
Section F. Duty to Require Disclosure of Other Sources of Benefits and to Require Application or Enrollment with Other Sources of Benefits for Coverage
1. Disclosure of Other Sources Of Benefits
2. Application or Enrollment with Other Sources of Benefits
3. Failure to Disclose or Apply for Benefits from Other Sources
Section G. Duty to Assist the Beneficiary
Section H. Duty to Maintain Files

ARTICLE VII THE DUTIES OF THE TRUSTEE
Section A. Duty to Act as the Trustee
Section B. Duty to Open Separate Account and to Manage the Trust Estate
Section C. Duty to Make Payments From the Trust Estate
1. Payment of Allowable Benefits
2. Payment of Other Trust Expenses
3. Source of Payments Made From the Trust Estate
4. Discretion of Trustee in Making Payments
Section D. Duty to Recover Payments
Section E. Duty to Maintain Files and Accounts and to Render Statements of Account
ARTICLE VIII THE DUTIES AND RESPONSIBILITIES OF THE BENEFICIARY
ARTICLE IX ALLOWABLE BENEFITS
Section A. Definition of Allowable Benefits
Section B. Enumeration of Allowable Benefits
ARTICLE X THE POWERS OF THE TRUSTEE
ARTICLE XI RESIGNATION OR REMOVAL OF THE TRUSTEE OR ADMINISTRATOR
Section A. Right of Resignation
Section B. Removal of the Trustee or the Administrator
Section C. Return of Unearned Fees
Section D. Transfer of the Trust Estate and the Trust Files
ARTICLE XII SUCCESSOR TRUSTEE OR ADMINISTRATOR
Section A. Appointment of Successor Trustee or Administrator
Section B. Qualifications of a Successor Trustee
Section C. Duties, Rights, Responsibilities, and Powers of Successors
Section D. Liability of Successors
ARTICLE XIII COMPENSATION OF THE TRUSTEE AND THE ADMINISTRATOR
ARTICLE XIV BOND EXCUSED
ARTICLE XV SPENDTHRIFT PROVISION
ARTICLE XVI NOTIFICATION REQUIREMENTS
ARTICLE XVII FORUM FOR DISPUTES AND APPLICABLE LAW
Section A. Dispute Resolution and Court of Competent Jurisdiction
Section B. Applicable Law
ARTICLE XVIII REVOCATION OR AMENDMENT
ARTICLE XIX TERMINATION OF THE TRUST
Section A. Terminating Event
Section B. Payments Authorized After Terminating Event
Section C. Distribution of the Trust Estate
ARTICLE XX SIGNATURES

## ARTICLE I
## ESTABLISHMENT OF THE TRUST

Pursuant to a *Stipulation For Compromise Settlement And Release* (hereinafter "Stipulation") of a Federal Tort Claims Act (28 U.S.C. § 2671, et seq.) matter, the United States of America (as the "Grantor") establishes this Irrevocable Reversionary Inter Vivos Grantor Medical Trust ("the Trust"). The Stipulation is attached hereto and incorporated herein by reference.

## ARTICLE II
## THE BENEFICIARY OF THE TRUST

The "Beneficiary" of the Trust is John Edker Ward, Jr. During any period of minority or legal incapacity, the term "Beneficiary" shall be read to include the Beneficiary's legal representative. The Beneficiary shall act through the Beneficiary's legal representative during periods of minority or legal incapacity. For purposes of the Trust, the term "legal representative" means any individual or entity authorized by law or court order to act on behalf of the Beneficiary for purposes of carrying out the terms and conditions of the Trust, including the Beneficiary's attorney, legal guardian, guardian, guardian ad litem, and conservator. In the event the Beneficiary has more than one "legal representative," the Administrator and the Trustee are entitled to rely upon the signatures, statements, or actions of any one of the legal representatives in carrying out the terms of the Trust, absent a court order to the contrary, provided such court order has first been presented to the Administrator, Trustee, and Grantor. The Grantor retains a reversionary interest, effective upon the termination of the Trust, as provided in Article XIX of the Trust.

## ARTICLE III
## THE PURPOSE OF THE TRUST

The purpose of the Trust is to pay allowable benefits, as defined in Article IX of the Trust, to or on behalf of the Beneficiary according to the terms and conditions of the Trust. Nothing in the Trust shall be construed to require the Beneficiary to use any particular medical provider or group of medical providers, unless expressly provided to the contrary in Article IX of the Trust.

## ARTICLE IV
## APPOINTMENT OF TRUSTEE AND ADMINISTRATOR

The Grantor appoints Peoples Bank, A Codorus Valley Company, as the "Trustee" of the Trust and appoints Proactive Medical Benefits Advisors, as the "Administrator" of the Trust. The Trustee and the Administrator agree to accept their respective appointments and to carry out their respective fiduciary duties and responsibilities as defined by the terms of the Trust. In the event the

same entity is appointed to act as both the Trustee and the Administrator, that entity shall carry out the duties and responsibilities of both the Trustee and the Administrator.

## ARTICLE V
## THE TRUST ESTATE

For purposes of the Trust, the term "Trust Estate" is defined to be the amount the Grantor initially deposits with the Trustee pursuant to the Stipulation, together with any income from Trust Estate investments and any payments from annuity contracts, if any, purchased by the Grantor pursuant to the Stipulation. The Trust and the Trust Estate shall be a secondary payer of allowable benefits based on the terms and conditions set forth herein.

No rights, obligations, duties, or allowable benefits are created or payable pursuant to the Trust unless and until all of the following conditions have been met: (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account. The Trust shall be deemed established when each and every one of these conditions has been met.

## ARTICLE VI
## THE DUTIES OF THE ADMINISTRATOR

### Section A. Duty to Act as the Administrator

The Administrator shall act as the Administrator and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Administrator" includes the present Administrator and any successor of said Administrator, whether by appointment pursuant to the Trust, or by way of merger, consolidation, or transfer of business.

### Section B. Duty to Review Requests for Payment of Allowable Benefits

#### 1. Administrator Has Exclusive Duty

The Administrator shall have the exclusive duty and responsibility to receive and review requests for payment of allowable benefits, as defined in Article IX of the Trust.

#### 2. Submission of Requests for Payment of Allowable Benefits

All requests for payment of allowable benefits must be submitted to the Administrator. Requests must be submitted and received by the Administrator within ninety days of the date the goods or services for which payment is being requested were provided. Absent good cause being

demonstrated by the Beneficiary, the Administrator shall reject and not authorize any request for payment of allowable benefits that is received by the Administrator more than ninety days after the goods or services for which payment is being requested were provided. In the event a request for payment of allowable benefits is submitted to the Trustee (and the Trustee is not also acting as the Administrator), the Trustee shall promptly transfer the request to the Administrator and shall take no further action with respect to the request for payment of allowable benefits unless and until the Trustee has received notification from the Administrator pursuant to Section E, below, to pay an amount from the Trust Estate to a particular payee.

**3. Documentation Required to be Submitted With Each Request**

a. Each request for payment of allowable benefits must be in writing on a form provided by the Administrator. The Beneficiary may submit a request for payment of allowable benefits, or the Beneficiary may authorize the provider of the goods or services to submit a request for payment of allowable benefits directly to the Administrator. The Beneficiary may arrange with the Administrator for the advance authorization of regularly recurring expenses. Except for requests for payment where advance authorization has already been obtained, each request for payment of allowable benefits must be signed by the Beneficiary.

b. Each request for payment of allowable benefits must include a written statement from the provider of the goods or services for which payment is being sought detailing the nature of the goods or services and detailing the charges for such goods or services. The written statement, together with supporting documentation (such as medical records or product information) and billing information, must provide sufficiently detailed information for the Administrator to determine whether such goods or services are payable by the Trust and to determine the amount to be paid from the Trust Estate. The written statement must specifically indicate whether the charges for the goods or services have been or will be submitted to any source of benefits other than the Trust, whether any portion of the charges has been or will be paid by any other source of benefits, the amount of any payment received, the balance due, and the identity (including name, address, and telephone number) of the other source of payments.

c. Unless already on file with the Administrator, each request for payment of allowable benefits shall include a written agreement by the Beneficiary to provide the Administrator (and the Trustee, if necessary) with: information; documentation; valid authorizations, including authorizations for the Administrator to submit any request for payment of allowable benefits to another source of benefits, as defined in Section D, below, after the Administrator has determined that the request for payment is otherwise payable by the Trust or to seek reimbursement or to apply for benefits from such other source of benefits; valid releases for medical or billing information; and signatures required by the terms of the Trust or deemed necessary by the Administrator and the Trustee to carry out their respective duties and responsibilities under the terms of the Trust.

**Section C. Duty to Determine Whether Payment of Request for Allowable Benefits is Authorized by the Trust**

**1. Determination of Allowable Benefits**

Upon the receipt of the information, authorizations, releases, and signatures required in Section B, Paragraph 3, above, the Administrator shall commence its review of each request for payment of allowable benefits and the Administrator shall, subject to this Article VI and Article IX of the Trust, determine whether the goods or services for which payment is being sought are allowable benefits under the terms of the Trust. The Administrator has no duty to determine whether the Trust authorizes any payments other than those for allowable benefits: those determinations are to be made by the Trustee within its duties, responsibilities, and powers under Articles VII and X of the Trust.

**2. Administrator's Determination Based Exclusively on the Terms of the Trust**

The Administrator's determination of whether a request for payment of allowable benefits is authorized by the Trust shall be based exclusively on the terms of the Trust. However, in determining the necessity for, or reasonableness of, any request for payment of allowable benefits, the Administrator may be guided by making reference to what would be deductible medical expenses under the Internal Revenue Code and such regulations and rulings which are then and there in effect. Notwithstanding any Internal Revenue Code, regulation, or ruling to the contrary, the Administrator shall not pay any allowable benefit unless it is otherwise allowed under the terms of the Trust even though the expense may be considered a deductible medical expense for tax purposes.

**3. Exclusions That Apply to Requests for Payment of Allowable Benefits Unless There is an Express Authorization to the Contrary in Article IX**

Unless otherwise specifically authorized in Article IX of the Trust, the Administrator shall **not** authorize (and the Trustee shall **not** pay) any of the following:

a. Goods and services that are received from, provided by, or paid for by any institution or agency of the United States Government.

b. Goods and services, or portions thereof, for which the Beneficiary is not liable for payment or has not been, or will not be, billed or charged.

c. Goods and services that were provided prior to the date the Trust is deemed established or goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established. The term "deemed established" is defined in Article V of the Trust.

d. Goods and services that were provided after the date the Trust is deemed terminated. The

term "deemed terminated" is defined in Article XIX of the Trust.

e. Goods and services that were provided by the Beneficiary's immediate relative or household member, such as spouse (by marriage, common law, or partner), parent, grandparent, child, sibling, or guardian, whether by blood, marriage, adoption, or legal appointment.

f. Goods and services that are paid by any person or entity, including Medicare or Medicaid, other than the Beneficiary, to the extent that such person or entity had a legal obligation to make such payment. The trust shall not pay any claim, lien, bill, or statement submitted by or on behalf of any State for payment to, or reimbursement of, Medicaid.

g. Goods and services for which the Beneficiary has been reimbursed or reasonably expects to be reimbursed, regardless of the source of the payment.

h. Investigational and experimental medical goods and services, unless such medical goods and services have been approved by the FDA for investigational or experimental purposes and provided further that such investigational or experimental medical goods or services are being provided to the Beneficiary in the United States.

i. Goods and services related to dental care.

j. Goods and services that are not medically necessary. For purposes of the Trust, the term "medically necessary" means that the goods or services are (i) prescribed by an individual who is authorized by law to write a prescription; (ii) consistent with the standards of good medical practice in the United States; (iii) primarily and customarily used only for a medical purpose; (iv) generally useful only to a person with an illness, disability, disease, or injury such as the Beneficiary's at the time treatment is being provided; (v) not primarily for the personal comfort (except that medications or surgeries to treat or relieve physical pain shall not be considered to be for "personal comfort" for the purpose of this definition) or the convenience of the Beneficiary, the family of the Beneficiary, or the provider of the goods or services; and (vi) for a specific therapeutic purpose in the treatment of any of the Beneficiary's illnesses, disabilities, diseases, or injuries.

k. Good and services for which the fees and charges, or any portion thereof, for such goods and services are in excess of the reasonable and customary fees and charges for such goods or services. For purposes of the Trust, the term "reasonable and customary fees and charges" means the prevailing fees and charges made by other providers of such goods and services within the geographic area in which the goods and services are being provided.

l. Treatment and care for cosmetic purposes.

m. In-home care, including attendant care.

n. Services of any kind, including medical services, therapy services (including habilitative,

rehabilitative, recreational, and speech therapy), counseling services, social services, educational and training services, and training in activities of daily living.

o. Equipment, devices, and appliances of any kind, including but not limited to the following: medical equipment, devices, and appliances; therapy equipment, devices, and appliances, including computers and computer software; educational equipment, devices, and appliances, supplies, books, computers, and computer software; training equipment, devices, and appliances, including computers and computer software; entertainment equipment, devices, and appliances, including computers, computer software, music or video equipment and software; and daily living equipment, devices, and appliances.

p. Goods and services relating to security or security systems.

q. Transportation or travel expenses of any type for any purpose.

r. The purchase, rent, or lease of any vehicle of any type; the maintenance of, or modification to, any vehicle; accessories on or additional equipment for any vehicle; or taxes or insurance on any vehicle.

s. The purchase, rent, lease, construction, or modification of any building of any type (including a home or residence) or any other type of structure; construction of any type on any land or real estate; maintenance of or modification to any building of any type, structure, or land; any expenses relating to access to a building of any type, or access within a building of any type; fixtures or accessories on or in any building of any type; taxes on a building of any type; or any insurance covering any land, building, or structure.

t. The purchase, rent, lease, maintenance, or modification of any personal property of any type; or any insurance covering any personal property of any type.

u. Burial and funeral expenses.

v. Goods or services that were not caused by, or directly related to, the injuries the Beneficiary contended in his lawsuit, herein Ward v. United States, Civil Action No. SA-06-CA-1067XR (U.S.D.C., Western District of Texas), were caused by the negligence of the United States.

**4. Deadline for Making Determination**

The Administrator shall complete its review and make its determination within thirty days of receipt of a request that fully and completely complies with the requirements of Article VI, Section B, of the Trust. If the review and determination cannot be made within the thirty-day period, the Administrator shall have an additional thirty days to complete said review and to make said determination, provided written notice of such extension is provided to the Beneficiary.

### 5. Reliance on Information Submitted

In making determinations pursuant to this Section C, the Administrator shall have the right to rely upon the information submitted by the Beneficiary or providers of goods and services. The Administrator shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit. The Administrator is not required to obtain an order or approval from any court or the approval of the Grantor, except as required by the Trust, in determining whether a request for payment of allowable benefits is authorized, in whole or in part, under the terms of the Trust. The Administrator shall not be liable in money damages for any discretionary payment or other loss that occurs other than through its own fault or negligence.

### 6. Denial of Requests for Payment of Allowable Benefits

If a request for payment of allowable benefits is denied, in whole or in part, the Administrator shall provide written notice of the decision to the Beneficiary. The notice shall state the reasons for the denial and shall be sent to the Beneficiary within a reasonable period of time, not to exceed fifteen days after the decision is made. The Beneficiary shall have ninety days from the date the Beneficiary receives the written notice of the denial to object to the denial. The Beneficiary waives any objection the Beneficiary has or might otherwise have with respect to the denial by failing to object within the ninety-day period provided above. Objections shall not be unreasonably made.

### 7. Disputes

If a dispute arises with respect to a request for payment of allowable benefits, the Administrator may refrain from taking any other or further action in connection with the disputed request for allowable benefits until the matter has been resolved.

## Section D. Duty to Submit Requests for Payment to Other Sources of Benefits

### 1. Submission of Requests for Payment to Other Sources of Benefits

For each request for payment of allowable benefits determined by the Administrator to be payable from the Trust Estate, the Administrator shall submit the request for payment to any other source of benefits from which the Beneficiary is entitled to benefits or payment before notifying the Trustee under Section E, below, to make a payment from the Trust Estate. When submitting the request to other sources of benefits, the Administrator shall notify the other source that the Trust Estate, as provided in Article V of the Trust, was established by the Grantor as a secondary payer on any request for payment of allowable benefits.

**2. Definition of Other Sources of Benefits**

For purposes of the Trust, the terms "other source of benefits," "another source of benefits," "other sources of benefits," are defined to mean any source of benefits or payments other than the Trust Estate or any special needs trust, but shall not include any assets owned by the Beneficiary. Examples of "other source of benefits," "another source of benefits," or "other sources of benefits," shall include, but not be limited to, group or individual health insurance; automobile insurance; federal, state, local, or tribal program or insurance; Worker's Compensation; and liability insurance.

**3. Procedures in the Event the Other Sources of Benefits Refuse to Pay**

In the event another source of benefits to whom a request for payment of allowable benefits has been submitted refuses to pay the request, in whole or part, the Administrator shall notify the Trustee pursuant to Section E, below, to make a payment from the Trust Estate for the allowable benefit to the extent otherwise authorized by the terms of the Trust. Thereafter, the Administrator shall seek reconsideration of the refusal to pay by the other source of benefits. In the event the other source of benefits reconsiders its refusal and agrees to pay the benefit, the payment from the other source of benefits shall be made payable to the Trust Estate and deposited by the Trustee into the Trust Estate.

**Section E. Duty to Notify Trustee to Pay Allowable Benefits From Trust Estate**

After the Administrator has determined that a request for payment of allowable benefits is authorized by the terms of the Trust, and to the extent the request has not otherwise been paid by another source of benefits after being submitted pursuant to Section D, above, the Administrator shall notify the Trustee in writing of the amount to be paid from the Trust Estate and the name of the person or entity to whom such payment is to be made.

**Section F. Duty to Require Disclosure of Other Sources of Benefits and to Require Application or Enrollment with Other Sources of Benefits for Coverage**

**1. Disclosure of Other Sources Of Benefits**

Within sixty days of the date the Trust is deemed established, and annually thereafter, the Administrator shall require the Beneficiary to disclose to the Administrator the identity of any source of benefits from which the Beneficiary is or may be entitled to payment or benefits for which the Trust is otherwise required to make payment. The term "other source of benefits" is defined in Section D, Paragraph 2, above. The Beneficiary must make a legitimate and reasonable effort to locate and identify all such sources of benefits.

**2. Application or Enrollment with Other Sources of Benefits**

Whenever the Administrator learns of any other source of payment or benefits that may be available for the payment of any benefits that are otherwise allowed under the terms of the Trust, the Administrator shall determine whether payment of allowable benefits is available from such source. The Trustee shall notify the Administrator if it learns of any other such source of benefits. In the event the Administrator determines that payment of allowable benefits may be available from another source of payment or benefits, the Administrator shall require the Beneficiary to submit an application to the other source of benefits for coverage by that other source. Pursuant to Article X of the Trust, the Trustee is authorized to pay the costs (such as enrollment fees or premiums) of coverage by the other source, provided the Trustee and Administrator have determined that enrollment with such other source and the payment of the cost of coverage from the other source is in the best interests of the Trust Estate and the Grantor concurs. The Trustee shall not pay the cost of any new or current coverage except for that portion of the cost attributable to having the Beneficiary covered.

**3. Failure to Disclose or Apply for Benefits from Other Sources**

In the event the Beneficiary refuses or fails to disclose the information required in Paragraph 1, above, or refuses or fails to apply for benefits from another source of payments or benefits as required in Paragraph 2, above, the Administrator shall determine the extent to which the other source of benefits would have otherwise paid for benefits that are otherwise allowed by the Trust. To the extent it appears to the Administrator, in its discretion, that the other source of benefits, upon receiving a valid application for benefits, may have paid, in whole or part, a request for payment of allowable benefits that would otherwise be allowed by the Trust, the Administrator shall not authorize the payment of the request for payment of allowable benefits from the Trust Estate to the extent the other source would have paid had a valid application been submitted. The Trustee is authorized to take any reasonable legal action to enforce the requirements in the Trust that the Beneficiary provide to the Trustee and Administrator any information, documentation, authorizations, access, or signatures required by the terms of the Trust or as requested by the Trustee or Administrator in administering the terms of the Trust.

**Section G. Duty to Assist the Beneficiary**

The Administrator shall provide the Beneficiary with assistance in applying for payment of allowable benefits from the Trust Estate. The Administrator may, in its discretion, provide clerical and technical assistance to the Beneficiary in determining the availability of benefits from any source of benefits and in completing an application to any source of benefits.

**Section H. Duty to Maintain Files**

The Administrator shall obtain and retain in its files a copy of all requests for payment of allowable benefits and supporting documentation, including receipts and itemizations. The

Administrator shall permit the Trustee, the Grantor, and the Beneficiary or their designated representatives to examine all such files and documentation.

## ARTICLE VII
## THE DUTIES OF THE TRUSTEE

### Section A. Duty to Act as the Trustee

The Trustee shall act as the Trustee and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Trustee" includes the present Trustee and any successor of said Trustee, whether by appointment pursuant to the Trust, or by way of merger, consolidation, transfer of Trust business, or otherwise.

### Section B. Duty to Open Separate Account and to Manage the Trust Estate

The Trustee shall open a separate account in the name of the Trust and deposit into such account the sum received from the Grantor pursuant to the Stipulation. The Trustee agrees to accept, hold, manage, invest, administer, and distribute the Trust Estate according to the terms of the Trust within the powers provided to the Trustee.

### Section C. Duty to Make Payments From the Trust Estate

#### 1. Payment of Allowable Benefits

Upon receipt of written notification from the Administrator pursuant to Article VI, Section E, of the Trust that an allowable benefit is to be paid from the Trust Estate, the Trustee shall make the payment authorized by the Administrator in the amount and to the payee authorized by the Administrator. The Trustee shall not pay any request for payment of allowable benefits without the express written authorization of the Administrator. In making a payment, the Trustee shall have the right to rely upon the determinations of the Administrator that a payment is authorized by the terms of the Trust and that the amount to be paid from the Trust Estate and the payee are correct. The Trustee shall incur no liability for disbursements made in reliance on such determinations by the Administrator. The Trustee shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit.

#### 2. Payment of Other Trust Expenses

In addition to making payments pursuant to Paragraph 1, above, for allowable benefits authorized by the Administrator, the Trustee shall also pay the other expenses of the Trust and Trust administration to the extent allowed by the terms of the Trust.

### 3. Source of Payments Made From the Trust Estate

Payments authorized by the Trust shall be paid first out of the income generated by the Trust Estate. At the end of each calendar year, any such income that has not been disbursed, expended, reserved, or otherwise accumulated, shall be accumulated and added to the Trust Estate as principal. In the event the income of the Trust Estate is insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee, in its discretion, may invade the principal of the Trust Estate. However, the Trustee may not invade the principal of the Trust Estate by an amount to exceed Twenty Thousand Dollars ($20,000) in any single calendar year without giving prior written notice to the Beneficiary and Grantor. The purpose of the notification requirement is to advise the Beneficiary and Grantor and to permit either of them to question payment requests that may jeopardize the long-term viability of the Trust Estate. The mere fact that such notice is given, however, shall not affect the obligation of the Trustee to make payments that are otherwise authorized by the Trust. For the purpose of this Paragraph 3, any annuity payments into the Trust Estate during any calendar year shall be considered income in determining the amount available for expenditure before the Trustee is considered to have invaded the principal of the Trust Estate, but shall not be considered in determining the fees of the Trustee or Administrator unless otherwise allowed under the Trustee's and Administrator's standard schedule of fees. In the event the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee shall make payments only to the extent funds are available in the Trust Estate. The Trustee shall not borrow from any source to make payments when the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust. In the event the Trust Estate becomes Zero Dollars ($0.00) and there is no income or annuity payments due in the future, the Trust shall be deemed terminated and the Trustee shall close the Trust according to the procedures set forth in Article XIX.

### 4. Discretion of Trustee in Making Payments

The Trustee is not required to obtain an order or approval from any court or the approval of the Grantor, except as required by the Trust, in making payments from the Trust Estate. The Trustee shall not be liable in money damages for any payment or other loss that occurs other than through its own fault or negligence. Until the Trustee has received, at the location where the Trust Estate is being administered, written notice of the Beneficiary's death or of any other event upon which the right of payments may depend, the Trustee shall incur no liability for making payments authorized by the Trust.

## Section D. Duty to Recover Payments

If subsequent to a payment of an allowable benefit, the Trustee determines that the payment should not have been made or should have been made in a lesser amount or that the Beneficiary has been reimbursed from another source of benefits for such benefit, the Trustee shall offset the amount of such payment to the extent of the overpayment. The Trustee is also authorized to take reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect

payments from other sources of payment. For purposes of the Trust, the term "overpayment" shall mean any of the following: any payment that should not have been made; any payment that should have been made in a lesser amount; any payment of an expense for which there has been payment or reimbursement from another source of benefits; and any payment of an expense that should have been paid from another source of benefits.

**Section E. Duty to Maintain Files and Accounts and to Render Statements of Account**

The Trustee shall obtain and retain in its files a copy of the receipts and itemizations for all expenses paid by the Trust Estate. The Trustee shall also maintain a system of accounting and books of account with respect to the income, expenses, and assets of the Trust Estate which conform to the generally accepted principles and practices of accounting. The Trustee shall permit the Grantor, the Administrator, and the Beneficiary or their designated representatives to examine all accounts, files, and documents relating to the Trust and the Trust Estate.

The Trustee shall render a statement of the administration of the Trust Estate to the Administrator, the Grantor, and the Beneficiary. The statement shall be made at least quarterly. Copies of all tax filings, if any, filed on behalf of the Trust Estate shall similarly be furnished. The Grantor and the Beneficiary shall each have ninety days from the date of receipt of each statement to object thereto. If the Grantor timely objects to any payment from the Trust Estate, or to the reasonableness thereof, or the necessity therefore, no such payment or similar payment shall be authorized or made in the future, except on written notice to the Grantor. The failure of the Grantor or the Beneficiary to object to an item on a statement or to a particular payment noted in the statement shall be conclusive as to such item or payment but shall not preclude the Grantor or the Beneficiary from objecting to like items or payments appearing in future statements. Objections shall not be unreasonably made.

The Trustee is authorized to provide a copy of the statement of the administration of the Trust Estate to any court of competent jurisdiction which may require the same, upon the consent of the Beneficiary.

## ARTICLE VIII
## THE DUTIES AND RESPONSIBILITIES OF THE BENEFICIARY

The Beneficiary has the duty and responsibility to cooperate with the Administrator and Trustee to the extent the terms of the Trust require the Administrator and the Trustee to obtain the cooperation of the Beneficiary in carrying out their respective duties and responsibilities. The Beneficiary also has the duty and responsibility to submit requests for payment of allowable benefits as required by the Trust; to provide signatures, authorizations, documentation, or information necessary for the carrying out of the terms of the Trust; to identify other sources of payments or benefits; to apply to other sources of payments or benefits for coverage; and to assist the Administrator and Trustee in obtaining payments or reimbursement from other sources of payments or benefits. The Beneficiary also has the duty and responsibility to transmit to the Trust Estate any

amount received by the Beneficiary from another source of payments or benefits in reimbursement for, or payment of, an expense that has been paid or will be paid from the Trust Estate.

## ARTICLE IX
## ALLOWABLE BENEFITS

**Section A. Definition of Allowable Benefits**

The term "allowable benefits" is defined to mean only those benefits that are 1) specifically enumerated in Article IX, Section B, below; 2) incurred after the date the Trust is deemed established, as defined in Article V of the Trust; 3) incurred before the date the Trust is deemed terminated, as defined in Article XIX of the Trust; 4) necessary and reasonable; 5) caused by, or directly related to, the injuries the Beneficiary contended in his lawsuit, herein Ward v. United States, Civil Action No. SA-06-CA-1067XR (U.S.D.C., Western District of Texas), were caused by the negligence of the United States; and 6) exclusively for the benefit of the Beneficiary, unless otherwise specifically authorized by the terms of the Trust.

**Section B. Enumeration of Allowable Benefits**

**1. Medical Treatment and Care Outside the Beneficiary's Principal Place of Residence**

The Administrator shall authorize and the Trustee shall pay for the Beneficiary's medical treatment and care outside the Beneficiary's principal place of residence, including, but not limited to, medical treatment and care for the diagnosis, cure, mitigation, or prevention of disease, illness, injury, or disability. The Administrator shall authorize and the Trustee shall pay for the services of physicians, surgeons, psychiatrists, psychologists, physician's assistants, registered nurses, licensed practical nurses, licensed or certified nurse's aides, radiologists, laboratory technicians, and other similarly licensed or certified health care personnel for the purpose of providing medical treatment and medical care to the Beneficiary outside the home of the Beneficiary.

The Administrator shall not authorize and the Trustee shall not pay for any type of care or services, whether such care or services are medical or non-medical, surgical, psychiatric, psychological, unskilled nursing care, counseling, companion services, cleaning services, personal attendant services, personal assistant, attendant care, custodial care and services, respite care, in the Beneficiary's principal place of residence or in any other person's home, regardless of the Beneficiary's medical or non-medical condition or needs, except to the extent specifically authorized in Paragraph 2 below.

For purposes of this Trust, the phrase "Beneficiary's principal place of residence" shall mean a single family home owned, rented, or leased by the Beneficiary.

2. **In-home Attendant Care**

a. For purposes of this Trust, the term "in-home attendant care" is defined to mean medical treatment and care, non-medical care, psychological or psychiatric treatment and care, skilled nursing care (i.e., care that requires a registered nurse or a licenced practical nurse), unskilled nursing care, counseling, companion services, cleaning services, personal attendant services, personal assistant services, attendant care, custodial care and services, respite care, and all other types of care, services, assistance, attendant care, and support that may be provided to, or is needed by, the Beneficiary in the Beneficiary's principal place of residence (as defined in Paragraph 1, above).

b. In-home attendant care may be authorized and paid only to the extent and under the circumstances specifically authorized by this Paragraph 2. Subject to the following terms and conditions, the Administrator shall authorize and the Trustee shall pay the Beneficiary for the Beneficiary's in-home attendant care service needs:

i. The Beneficiary must be physically present in the Beneficiary's principal place of residence at such time as the in-home attendant care services are provided. Payment is not authorized under this Paragraph 2 if the Beneficiary is not physically present in his principal place of residence at the time such in-home attendant care services are provided. For any period of time that the Beneficiary is not physically present at the Beneficiary's principal place of residence, including a period of time when the Beneficiary is a patient at a hospital, or is a resident at, or is admitted to, a hospital, nursing home, foster home, foster care facility, residential care facility, licensed group home, long-term care facility, or hospice facility, the Administrator shall not authorize and the Trustee shall not pay for any in-home attendant care under this Paragraph 2.

ii. Subject to the terms and conditions of this Paragraph 2.b., the Administrator shall authorize and the Trustee shall pay for in-home attendant care services for up to a maximum of fourteen (14) hours per day.

iii. The Administrator shall authorize and the Trustee shall pay for in-home attendant care under this Paragraph 2 at the skill level of in-home attendant care services that is medically necessary (as defined in Article VI, Section C, Paragraph 3.g., above) and at the reasonable and customary charge (as defined in Article VI, Section C, Paragraph 3.h. above) for that skill level for providing such in-home attendant care services. However, in the event that the person providing in-home attendant care services authorized by this Paragraph 2 is a relative or household member of the Beneficiary, the Administrator shall authorize and the Trustee shall pay such relative or such household member an hourly rate of pay equal the hourly rate then being charged by a home health aide (but not the hourly rate of a licensed practical nurse, registered nurse, or any skill level in excess of the minimum skill level required to be a home health aide or nurse's aide) in the local community or geographic area in which the Beneficiary is physically residing who is hired as a contractor directly by a person requiring such services (as opposed to the local hourly rate then being charged by an agency or business to provide a home health aide or nurse's aide to a person requiring

such services). For purposes of this Trust, the terms "relative" and "household member" shall include but not be limited to a spouse (by marriage or common law), a child (by blood, adoption, or otherwise), a parent, a grandparent, a sibling (by blood, adoption, or otherwise), an aunt or uncle, a niece or nephew, a guardian, a guardian ad litem, a conservator, a house-mate, or a roommate.

iv. The Administrator shall authorize and the Trustee shall pay only one provider of in-home attendant care services per hour, regardless of the Beneficiary's medical needs, the type of services being provided, or the person or skill level of the person providing such services.

c. Except to the extent expressly authorized in this Paragraph 2, the Administrator shall not authorize and the Trustee shall not pay for in-home attendant care regardless of the Beneficiary's medical needs, the type of services being provided, or the person or skill level of the person providing such services.

**3. Emergency Room, Hospital, and Residential Care Facility**

The Administrator shall authorize and the Trustee shall pay for the cost of the Beneficiary's admission to any hospital or emergency room. The Administrator shall authorize and the Trustee shall also pay for the cost of admission to a nursing home or other type of licensed residential care facility (including a licensed group home, long-term care facility, and a licensed foster home, except not any foster home that is in any way owned, in whole or part, or operated by the Beneficiary's family, which shall include his spouse, children, siblings, relatives, whether by blood, adoption, or marriage). The cost of admission to any facility authorized in this Paragraph 3 shall include room, board, and medical expenses. Except to the extent expressly authorized in this Paragraph 3, the Administrator shall not authorize and the Trustee shall not pay for the cost of admission to or residence at any other type of facility other than stated in this Paragraph 3.

**4. Therapy and Counseling**

a. The Administrator shall authorize and the Trustee shall pay for physical and occupational therapy necessitated by the Beneficiary's medical condition, provided that the Beneficiary's treating physician orders such therapy and certifies in writing that the Beneficiary is capable of benefitting from such therapies and provided further that such therapies are administered by licensed health care providers, licensed therapists, or therapists trained in generally accepted therapy modalities provided such therapists are subject to supervision. In the event the Beneficiary is receiving therapy at no cost under any program provided, sponsored, or paid for by the United States, any State of the United States, or any Territory of the United States or District of Columbia, or is receiving therapy provided, sponsored, or paid for by any private program or insurance, or is receiving therapy at a facility, the Administrator shall authorize and the Trustee shall pay only the amount necessary to supplement the therapies the Beneficiary is receiving under such statutes, programs, or insurance.

b. The Administrator shall authorize and the Trustee shall pay for individual counseling for the Beneficiary.

c. Except to the extent expressly authorized in this Paragraph 4, the Administrator shall not authorize and the Trustee shall not pay for therapy or counsel regardless of the Beneficiary's needs, the type of services being provided, or the person or skill level of the person providing such services.

**5. Prescription Drugs and Medicines; Medical Devices; Medical Appliances; Durable Medical Equipment; Medical Supplies; and Medical Diagnostic Procedures and Testing**

The Administrator shall authorize and the Trustee shall pay for prescription drugs and medicines; medical devices; medical appliances; durable medical equipment; medical supplies; and medical diagnostic procedures and testing. In the event the Administrator has authorized and the Trustee has paid for a medical device, medical appliance, or durable medical equipment, the Administrator shall authorize and the Trustee shall pay for the cost of maintenance on any such item that was purchased from Trust Estate funds.

Notwithstanding any definition of medical devices, medical appliances, durable medical equipment, or medical supplies to the contrary, the following items shall not be paid under this Paragraph 5:

a. Any expenses relating to a motor vehicle. The types of expenses precluded by this subparagraph include but shall not be limited to: the purchase, lease, or rent of a motor vehicle; the repair, maintenance, or modification (including any equipment to be installed during such modification) of a motor vehicle; taxes or insurance on a motor vehicle; and all other types of expenses or costs associated with a motor vehicle or the operation of a motor vehicle.

b. Any expenses relating to a home or real estate. The types of expenses precluded by this subparagraph include but shall not be limited to: the purchase, lease, or rent of a home or real estate; the construction, renovation, modification, repair, or addition to a home or real estate; expenses relating to access to a home or real estate or access or mobility within a home or real estate; fixtures for a home or real estate; insurance or taxes on a home or real estate; and all other types of expenses relating to a home or real estate.

c. Swimming pools, lap pools, spas, whirlpools, or saunas; leisure/exercise/recreational equipment.

d. The construction, rent, or lease of any facility or structure for any type of therapy or for any other purpose.

e. Computers, computer hardware, computer software, and computer peripherals, except to the extent the computer or computer hardware has been or will be implanted in the Beneficiary, is a component in such implant in the Beneficiary, is a component of a medical appliance or device, or is a computer peripheral or software specifically and exclusively designed for a person with visual impairment.

The Administrator may make arrangements with a firm such as PMSI (Pharmacy Management Services, Inc., P.O. Box 20248, Tampa, Florida 33622-0248; 1-800-237-7676) or another similar service for advance deposit for drugs and services as may be to the benefit and convenience of the Beneficiary if prescription services are not available through governmental programs or private insurance.

**6. Transportation**

The Administrator shall authorize and the Trustee shall pay for reasonably incurred transportation expenses of the Beneficiary ( including ambulance hire) primarily for and essential to obtaining emergency medical care, emergency medical treatment, or emergency medical services. The Administrator shall not authorize and the Trustee shall not pay for any other transportation expenses except for those specifically authorized in this Paragraph 6, regardless of the Beneficiary's medical needs.

**7. Health Insurance**

The Administrator shall authorize and the Trustee shall pay the costs (such as enrollment fees or premiums) of health insurance coverage for the Beneficiary, provided that the Trustee and Administrator have determined that such costs of coverage for the Beneficiary are in the best interests of the Trust Estate and provided further that the Grantor concurs. In the event the Trustee and Administrator determine under this Paragraph 7, and under Article VI, Section F, Paragraph 2 and Article X, Paragraph 3, that some or all of the cost of health insurance coverage for the Beneficiary should be paid by the Trust Estate, the fact that the health insurance policy under consideration also covers medical claims that this Trust would not otherwise pay under the terms of Article IX, or also provides coverage to persons other than the Beneficiary, should not be used to reject a request by the Beneficiary for the payment of the cost of enrollment fees or premiums, provided however that the Trust shall not pay any costs of coverage for any person other than the Beneficiary.

**8. Motor Vehicle Allowance**

The Administrator shall not authorize and the Trustee shall not pay for any expenses relating to a motor vehicle. The types of expenses precluded by this Paragraph include but shall not be limited to: the purchase, lease, or rent of a motor vehicle; the repair, maintenance, or modification (including any equipment to be installed during such modification) of a motor vehicle; taxes or insurance on a motor vehicle; and all other types of expenses or costs associated with a motor vehicle or the operation of a motor vehicle.

**9. Home Allowance**

a. The Administrator shall not authorize and the Trustee shall not pay for any expenses

relating to a home or real estate. The types of expenses precluded by this Paragraph include but shall not be limited to: the purchase, lease, or rent of a home or real estate; the construction, renovation, modification, repair, or addition to a home or real estate; expenses relating to access to a home or real estate or access or mobility within a home or real estate; fixtures for a home or real estate; insurance or taxes on a home or real estate; and all other types of expenses relating to a home or real estate.

b. However, to help defray such expenses related to a home or real estate, the Administrator shall authorize and the Trustee shall pay to the Beneficiary a maximum life-time allowance of One Hundred Thousand Dollars ($100,000.00), on the terms and conditions set forth in this Paragraph 9:

i. The Administrator shall not authorize and the Trustee shall not pay any portion of the life–time maximum allowance during the first year after the date this Trust is deemed established;

ii. The Administrator may authorize and the Trustee may pay up to a maximum of $50,000.00 after the first anniversary of the date that this Trust is deemed established, provided that at the time the request for payment of any portion of the $50,000 is made, the Beneficiary is residing and actually living on a full-time basis in the Beneficiary's principal place of residence, as defined in Paragraph 1, above, at least 100 days of the 365 days immediately prior to the date the Beneficiary makes the request;

iii. The Administrator may authorize and the Trustee may pay the balance of the life-time allowance only if and when the Beneficiary moves from the Beneficiary's principal place of residence, as defined in Paragraph 1, above, where he was residing at the time the payment of any portion of the allowance authorized in subparagraph 9.b.ii., above, was paid to a new principal place of residence, as defined in Paragraph 1, above.

iv. The Administrator shall not authorize and the Trustee shall not pay any expenses relating to a home or real estate or any allowances for such expenses except to the extent expressly authorized in this Paragraph 9.

**10. Miscellaneous Expenses**

The Administrator shall not authorize and the Trustee shall not pay miscellaneous expenses of the Beneficiary. For purposes of the Trust, the term "miscellaneous expenses" shall mean any expense of the Beneficiary that is not otherwise specifically authorized by the terms and conditions of the Trust.

## ARTICLE X
## THE POWERS OF THE TRUSTEE

The Trustee shall have the following enumerated powers and all those powers provided by

the laws of the Trustee's domicile, provided such powers are not inconsistent with the powers enumerated herein or the terms of the Trust. The Trustee shall exercise these powers in its sole discretion and without license or leave of any court.

1. To pay allowable benefits from the Trust Estate to the extent authorized by the terms and conditions of the Trust.

2. To employ at its option and with prior consent of the Beneficiary any person or business for the purpose of providing allowable services to or for the Beneficiary, provided the Trustee determines that employment by the Trust directly is more economical than paying a third party to arrange for the provision of such services and that it will not detract from the quality of services provided to the Beneficiary.

3. To pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms and conditions of the Trust.

4. To pay or reserve sufficient funds to pay all expenses of management and administration of the Trust, including all assessments, charges, fees, taxes, or other expenses incurred in the administration, enforcement, or protection of the Trust and the Trust Estate not otherwise precluded by state law or any other provision of the Trust. Such expenses shall include the fees of the Trustee and the Administrator to the extent authorized in Article XIII of the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses relating to the establishment, administration, or termination of a guardianship or conservatorship for the Beneficiary. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by either the Beneficiary or Grantor in resolving any disputes, questions, or interpretations arising under the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by the Beneficiary in seeking or obtaining benefits from any source of benefits other than the Trust, except that the Trustee shall pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms of the Trust. In the event the Trustee must retain legal counsel to represent the interests of the Trustee, the Administrator, or the Trust Estate in resolving any dispute, question, or interpretation arising under the Trust or to represent the Trustee, the Administrator, or the Trust Estate in the administration or protection of the Trust and the Trust Estate or for the purpose of enforcing the terms of the Trust, the Trustee is prohibited from retaining any attorney or law firm who represents or has represented the Beneficiary or any relative of the Beneficiary or any guardian or conservator of the Beneficiary.

5. To retain any property held in the Trust Estate for as long as the Trustee shall deem it advisable, provided the Trustee takes into account the purpose of the Trust.

6. To invest and reinvest in, and to acquire by purchase, exchange, or otherwise, intangible property such as stocks, bonds, securities, mutual funds, certificates of deposits, bank savings or checking accounts, foreign or domestic, or interests of participation therein (including common

Trust Estate funds and mutual funds associated with the Trustee), without regard to the proportion any such property may bear to the entire amount held without any obligation to diversify, to the extent consistent with the purpose of the Trust and prudent investment rules. In the event the Trust Estate is less than One Hundred Thousand Dollars ($100,000.00) for three consecutive years and there is no reasonable basis to expect that the Trust Estate shall subsequently exceed One Hundred Thousand Dollars ($100,000.00), the Trustee may limit Trust investments to certificates of deposit and bank savings and checking accounts in an FDIC insured financial institution. The Trustee may receive compensation from internal funds. Investments in such internal funds may be charged fees and expenses at the rate and according to the formula set forth in the prospectus applicable to the investment. The Trustee may also use the services of affiliated brokerage services as it deems appropriate in its sole discretion in connection with the purchase or sale of account assets. Any such transactions will be deemed appropriate, even where the Trustee has an underwriter's interest or charges fees or commissions which include a profit, so long as all such transactions are on terms and under circumstances comparable to those generally available through non-affiliated brokers. The Trustee shall attempt to invest all principal sums in excess of One Thousand Dollars ($1,000.00).

7. To sell (at public or private sale, without application to any court) any property in the Trust Estate in such manner and on such terms and conditions as it may deem best to the extent consistent with the purpose of the Trust and prudent investment rules.

8. To vote personally or by proxy any shares of stock or other voting securities at any time held hereunder, and to consent to and participate in any reorganization, consolidation, merger, liquidation, or other change in any corporation whose stocks or securities may at the time be held hereunder.

9. To commingle the assets of the Trust Estate with the assets of other trusts not owned by or property of the Beneficiary in order to maximize the investment income of the Trust Estate.

10. Except to the extent prohibited by law, to cause any securities to be registered in the names of its nominees, or to hold any securities in such condition that they will pass by delivery, including the use of custodians and other depositories.

11. To liquidate, compromise, adjust, and settle any and all claims and demands, including taxes, in favor of or against the Trust Estate, for such amounts, upon such terms, in such manner, and at such time as the Trustee shall reasonably deem advisable upon the consent of the Grantor.

12. To allocate to principal all stock dividends and cash in lieu of fractional shares paid as a result of a stock dividend received on stock.

13. To continue to make distributions of income and/or to accumulate the same hereunder until the Trustee shall have received written notice of any event which would affect such distribution and/or such accumulation of income; and the Trustee shall not be liable to any person having any

interest in such continuation until the Trustee shall have received such written notice.

14. Except as otherwise specifically provided herein, the determination of all matters with respect to ascertaining what is principal and income of the Trust Estate and the apportionment or allocation of receipts and expenses between these accounts shall be governed, at the election of the Trustee, by the provisions of either the Uniform Principal and Income Act from time to time existing or the Principal and Income Act of the state in which the Trustee resides. Any such matter not provided for herein, or not provided for in the Principal and Income Act elected by the Trustee, shall be determined by the Trustee in the Trustee's sole discretion.

15. To invoke the jurisdiction of a court of competent jurisdiction, by petition or other procedure, in order to protect the interests of the Trust Estate, to comply with or to enforce the terms of the Trust, or to resolve any dispute or question arising under the Trust in the event the parties to the dispute or question have attempted to resolve the matter informally as required by the Trust and failed. The Trustee is also authorized to take reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect payments from other sources of payment.

## ARTICLE XI
## RESIGNATION OR REMOVAL OF THE TRUSTEE OR ADMINISTRATOR

### Section A. Right of Resignation

The Trustee shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Administrator. The Administrator shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Trustee. An entity that is acting as both the Trustee and the Administrator shall have the right to resign from either or both appointments upon giving ninety days written notice of such resignation to the Grantor and the Beneficiary.

### Section B. Removal of the Trustee or the Administrator

The Grantor shall have the right to remove a Trustee or an Administrator upon sixty days written notice to the Trustee, the Administrator, and the Beneficiary.

### Section C. Return of Unearned Fees

In the event the Trustee or an Administrator resigns or is removed from office, the resigning or removed Trustee or Administrator, prior to leaving the service of the Trust, shall return that portion of payments made to it during the Trust accounting period which represents unearned income. For purposes of the preceding sentence, "unearned income" shall mean the pro rata portion of all payments made to the resigning or removed Trustee or Administrator for which services have not been rendered. In the case of annual payments, this amount shall be determined by multiplying